**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Tel: (858) 375-7385
Fax: (888) 422-5191

Counsel for Plaintiff and the Putative Class

## UNITED STATES DISTRICT COURT

## BY AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA OTANEZ VERDUGO individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPSTONE LOGISTICS, LLC, a Delaware limited liability company with its principal place of business in Georgia, and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No: 2:22-cv-03141 FMO (Ex)<br><br>[Hon. Judge Fernando M. Olguin]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: July 13, 2023<br>Time: 10:00 a.m.<br>Courtroom: 6D |

<u>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL** OF</u>
<u>CLASS AND REPRESENTATIVE ACTION SETTLEMENT</u>

**PLEASE TAKE NOTICE THAT** on July 13, 2023 at 10:00 a.m. at the United States District Court for the Central District of California located at 350 W. 1st Street, Courtroom 6D, 6th Floor, Los Angeles, California, Plaintiff Andrea Otanez Verdugo, individually and on behalf of those similarly situated will, and hereby does, move this Court to:

1.    Grant preliminary approval of the class and representative action settlement reached between Plaintiff Andrea Otanez Verdugo ("Plaintiff") and Defendant Capstone Logistics, LLC ( "Defendant") (Plaintiff and Defendant collectively referred to as the "Parties") as set forth in the Parties' Stipulated Settlement of Agreement and Release of Claims (the "Settlement Agreement" or "Agreement"), which is attached as **Exhibit 1** to the Declaration of James M. Treglio, filed concurrently herewith in support of Plaintiff's Motion for Preliminary Approval of Class and Representative Action Settlement ("Treglio Decl.");

2.    Conditionally certify the Class for settlement purposes, defined as:

(a) The Non-Exempt Settlement Class shall consist of all current and former employees who worked for Capstone within the State of California in a non-exempt position at any time from August 1, 2019 through the Preliminary Approval Date.

(b) The Waiting Time Settlement Class shall consist of all non-exempt former employees who worked for Capstone within the State of California at any time from August 1, 2019 through the Preliminary Approval Date but were no longer employed at the Effective Date. The Non-Exempt Settlement Class and the Waiting Time Settlement Class are together referred to as the "Settlement Class." (the "Class" or "Settlement Class");

3.    Approve the Notice of Proposed Settlement of Class and Representative

Action (in the form set forth as **Exhibit A** to the Settlement Agreement);

4.    Approve Andrea Otanez Verdugo as the Class Representative;

5.    Approve Potter Handy LLP as Class Counsel;

6.    Approve ILYM Group, Inc. as the Settlement Administrator;

7.    Approve the Gross Settlement Fund;

8.    Schedule the date for the final approval hearing; and

9.    Enter the [Proposed] Order Granting Motion for Preliminary Approval of Class and Representative Action Settlement filed herewith.

This Motion is unopposed as based on the Settlement Agreement.  This Motion is made on the grounds that:

a.    The Settlement Class meets all of the requirements for class certification for purposes of settlement pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

b.    The Settlement is fair, adequate, and reasonable as required under Rule 23(e) of the Federal Rules of Civil Procedure;

c.    Plaintiff and her counsel are adequate to represent the Settlement Class, as required by Rule 23(a)(4) and (g) of the Federal Rules of Civil Procedure;

d.    The notice procedures and related forms comport with all relevant due process requirements and the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure; and

e.    Based on the foregoing, notice should be directed to Class Members and a final fairness hearing should be scheduled.

This Motion is  based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary Approval of Class and Representative Action Settlement; (3) the Declarations  of  James Treglio, Gerald Maatmam,  and  Eric Lietzow;  (4) the Settlement Agreement; (5) the Notice of Proposed Class and Representative Action

Settlement; (6) the [Proposed] Order Granting Preliminary Approval of Class and Representative Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion. Further, pursuant to Central District Local Rule 11-6, Plaintiff respectfully requests that this Court grant Plaintiff's relief from the twenty-five-page (25) limit and permit the filing of the attached Memorandum of Points and Authorities not to exceed thirty-five (35) pages. Such additional page length is needed to fully address the issues raised in this motion.

Further, pursuant to the Stipulation and Order submitted on May 11, 2023, the Parties require additional time to provide the Court with all the information requested by the Court at the April 13, 2023 hearing (Dkt. No. 55). As such, the Parties intend on submitting supplemental documents, such as supplemental Declarations of James M. Treglio, Gerald Maatmam, Eric Lietzow, and Andrea Otanez Verdugo no later than 28 days prior to the July 13, 2023 hearing.

DATED: May 12, 2023                **POTTER HANDY LLP**


                                   By:    _/s/ James M. Treglio_
                                          MARK D. POTTER
                                          JAMES M. TREGLIO
                                          Attorneys for Plaintiff
                                          Andrea Otanez Verdugo

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... v

TABLE OF AUTHORITIES ............................................................................ viii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.    INTRODUCTION AND OVERVIEW .................................................... 1

II.   BACKGROUND ....................................................................................... 2

A.    General Background Information about the Parties ......................... 2

**B.    The Claims Asserted by Plaintiff in This Case, and Procedural History** .... 3

1.  *Claims asserted by Plaintiff.* ....................................................... 3

2. *Procedural History, Discovery, and Settlement.* ........................... 4

3. *The Parties Completed Substantial Discovery and Investigation* ............. 4

4. *Mediation and Subsequent Negotiations* ...................................... 5

5. *Information on Other Pending Matters* ......................................... 5

III.  SUMMARY OF THE SETTLEMENT TERMS .................................... 7

**A.    Composition of the Settlement Class** ........................................... 7

**B.    Settlement Consideration and Calculation of Settlement Payments** ........... 7

**C.    Release by the Settlement Class** ................................................. 9

1. *Settlement Mechanics* ................................................................. 9

2. *The Release of Plaintiff and Class Members* .............................. 11

a.   Class Claims Released ......................................................... 11

b.   PAGA Claims Released ........................................................ 12

c.   Additional Release by Class Representative ......................... 13

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE
ACTION SETTLEMENT

3. *Uncashed Checks* ............................................................................ 13

IV.    THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED SETTLEMENT CLASS ...................................................................................... 13

A.    The Settlement Class and Subclasses are Sufficiently Numerous and Ascertainable. ................................................................................................. 14

B. There Are Questions of Law and Fact Common to the Class. ........................... 14

C.    The Representative Plaintiff's Claims Are Typical of the Claims of the Class and Subclasses. ................................................................................................ 16

D.    Plaintiff and Plaintiff's Counsel Will Adequately Represent the Class. .......... 17

E.    The Class Can Be Conditionally Certified Because the Requirements of FRCP Rule 23(b)(3) Are Satisfied. ......................................................................... 17

1. *Common Issues of Law and Fact Predominate* ........................................... 18

2. *The Class Action Mechanism is Superior to Any Other Methods of Adjudication* ................................................................................................. 19

V.    THE PROPOSED CLASS ACTION SHOULD RECEIVE PRELIMINARY APPROVAL AS IT MEETS ALL OF THE REQUIREMENTS OF RULE 23 ........ 19

A. The Class Representative and Class Counsel Have Adequately Represented the Class. ............................................................................................................. 20

B. The Settlement Is the Product of Arms-Length Negotiations and Is Therefore Entitled to a Presumption of Fairness. .......................................................... 20

C.    The Relief Provided to the Class Is Adequate. ................................................ 21

1. *Costs, Risks, and Delay of Trial and Appeal* ............................................... 21

2. *Defendant Has Asserted Defenses Creating Risk that the Class Will Receive No Recovery If the Claims at Issue Are Not Settled* ........................................ 22

3.   *Exposure Analysis* ........................................................ 29

4.   *Allocation to LWDA for PAGA Penalties* ................................... 30

5.   *Benefits to Early Resolution* .............................................. 31

6.   *The Effect of Defendant's Prior Settlement* ............................... 31

D.   The Method of Distributing Relief to the Class Is Effective. ........................ 32

E.   Attorneys' Fees Are Reasonable. ..................................................... 33

F.   There Are No Agreements Made in Connection with the Settlement Other than
What Plaintiff Already Identified. .......................................................... 34

G.   The Settlement Provides for Equitable Treatment of Class Members. ............ 35

H.   The Court Should Approve ILYM Group, Inc. as Settlement Administrator. . 36

VI.   CONCLUSION ............................................................................. 36

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE
ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Federal Cases**

*Medlock v. Host Int'l*, Inc., No. 1:12-CV-02024-JLT, 2013 WL 2278095, at *3 (E.D. Cal. May 22, 2013)...................................................................................................26

**U.S. State Cases**

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015)...............35

*Bolton v. U.S. Nursing Corp.*, No. 12-CV-4466-LB, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013).......................................................................................................29

*Brinker Rest. Corp. v. Superior Court,* 53 Cal. 4th 1004, 1053 (2012) .........................26

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 514 (2014) .......................................29

*China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 n.7 (2018) ...................................35

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). ...........................................32

*Galeener v. Source Refrigeration & HVAC, Inc.*, No. 3:13-CV-04960-VC, 2015 U.S. Dist. LEXIS 193096, at *7-8 (N.D. Cal. Aug. 21, 2015)...........................................35

*Galvan v. KDI Distrib., Inc.*, No. 08-CV-0999-JVS-ANX, 2011 WL 5116585, at *6 (C.D. Cal. Oct. 25, 2011) .........................................................................................16

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-CV-1365-CW-EMC, 2010 U.S. Dist. LEXIS 49477, at *47 (N.D. Cal. Apr. 22, 2010) ......................................................35

*Glass v. UBS Fin. Servs., Inc.*, No. 06-CV-4068 MMC, 2007 WL 221862, at * (N.D. Cal. Jan. 26, 2007)...................................................................................................35

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988).....................16, 19, 21

*Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009)............................................................................................30

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ...........33

*In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018)..........................................................................................33

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) .................. 33

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) .......................... 17

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)................................... 34

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 ............................................ 21

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*
    ("*Volkswagen*"), 2016 WL 4010049, *14 (N.D. Cal. July 26, 2016). ....................... 20

*Johnson v. Gen. Mills, Inc.*, No. 10-CV-00061-CJC, 2013 WL 3213832, at *6 (C.D.
    Cal. June 17, 2013)............................................................................................... 34

*Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 503 (2016)........................................... 33

*Levya v. Medline Indus, Inc.*, 716 F.3d 510, 512 (9th Cir. 2013)................................... 13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)........................ 31

*Mara Gomez, et al, v. Pinnacle Logistics, LLC, et al.*, San Bernardino Superior Court
    Case No CIVDS1804163). ...................................................................................... 31

*Milburn v. PetSmart, Inc.*, No. 1:18-CV-00535-DAD, 2019 WL 5566313, at *10 (E.D.
    Cal. Oct. 29, 2019) ................................................................................................. 34

*Moore v. PetSmart, Inc.*, 2015 WL 5439000, at *13 (N.D. Cal. Aug. 4, 2015)............. 35

*Morris v. Lifescan, Inc.*, 54 Fed. App'x. 663, 664 (9th Cir. 2003) ............................... 33

*Nat'l Rural Telecommunications Coop.*, 21 221 F.R.D. at 526. .................................... 30

*Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) .................................................... 14

*Reed v. Thousand Oaks Toyota*, No. 56-201200419282-CU-OE-VTA, 2013 WL
    8118716 (Cal. Super. Ct. Apr. 8, 2013) ................................................................. 29

*Rittmann v. Amazon.com, Inc.,* 971 F.3d 904 (9th Cir. 2020), cert. denied, 141 S. Ct.
    1374 (2021 .............................................................................................................. 25

*Southwest Airlines Co. v. Saxon*, No. 21-309, 2022 WL 1914099 (June 6, 2022) ........ 25

*Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). ............................................. 35

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011)............................ 17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE
ACTION SETTLEMENT

*Vedachalam v. Tata Consultancy Servs., Ltd*, No. 06-CV-0963-CW, 2013 WL
3941319, at *2 (N.D. Cal. July 18, 2013) .......................................................... 34

*Viking River Cruises, Inc. v. Moriana*, U.S. Supreme Court Case No. 20-1573 ....... 5, 29

*Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1304 (W.D. Wash. 2001), *aff'd*,
290 F.3d 1043 (9th Cir. 2002) ....................................................................... 34

*Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020), cert. denied, No. 20-1077,
2021 WL 2519107 (U.S. June 21, 2021 ......................................................... 25

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011) .............................. 13, 14


**State Statute**

IWC Wage Order 9–2001 .................................................................................. 26


**Rules**

Fed. R. Civ. P. 23(b)(3) .................................................................................. 13

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE
ACTION SETTLEMENT

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiff Andrea Otanez Verdugo ("Plaintiff") respectfully submits this memorandum of points and authorities in support of the Motion for Preliminary Approval of Class and Representative Action Settlement ("Motion").

## I.    INTRODUCTION AND OVERVIEW

Plaintiff and Defendant Capstone Logistics, LLC ("Defendant") have reached a settlement of the above-captioned class and representative action ("Settlement"), which is embodied in the Parties' Stipulated Settlement of Agreement and Release of Claims (the "Settlement Agreement" or "Agreement"), attached as **Exhibit 1** to the Declaration of James M. Treglio ("Treglio Decl."), filed concurrently herewith. By this Motion, Plaintiff seeks preliminary approval of the Agreement as fair, reasonable, and adequate, entry of the Preliminary Approval Order, and scheduling of the Final Approval Hearing to determine final approval of the Settlement.

The proposed **$1,400,000.00** non-reversionary settlement of this class and representative wage and hour case was achieved after extensive negotiations. The Settlement will provide monetary payments to over **12,542** Class Members with an average gross settlement award of $74 per Class Member, this settlement is fair and reasonable in light of the ongoing uncertainty related to arbitration, and it matches the settlement per workweek paid in an earlier class action against Defendant for substantively the same causes of action and over the course of a longer period of time in *Mara Gomez, et al, v. Pinnacle Logistics, LLC*, *et al.,* San Bernardino Superior Court Case No CIVDS1804163, despite the fact that Defendant has taken the position that these claims are all subject to individual arbitration. (ECF No. 31). Despite the inherent risks of a pending motion to compel arbitration, class certification, litigation, and appeals, the Parties have reached a possible resolution that is fair, reasonable, and understanding of the possible risks to the Class that, if unresolved, would result in years of litigation and appeals. As set forth more fully below, the proposed Settlement

satisfies all the criteria for settlement approval under Federal Rule of Civil Procedure 23. The Settlement was reached after substantial investigation and discovery.  The negotiations were at arms-length and non-collusive, and were facilitated by experienced wage and hour mediator Lisa Klerman over the course of a full-day mediation session and follow-up negotiations facilitated by the mediator. Accordingly, Plaintiff requests that the Court preliminarily approve the proposed Settlement, certify the proposed Class for settlement purposes, approve the distribution of notice of the proposed Settlement, and set a Final Approval Hearing.

## II.    BACKGROUND

### A.    General Background Information about the Parties

Defendant Capstone Logistics, LLC ("Defendant") is a Delaware limited liability company headquartered in Peachtree Corners, Georgia. Defendant is a provider of supply chain solutions throughout the country, operating in more than 550 locations, including in the State of California. It has capabilities in freight management, warehouse and distribution center support, last mile delivery, supply chain analytics and optimization, among others. Defendant's integrated, end-to-end logistics solutions help its partners reduce warehousing and transportation costs.

Specifically, Defendant is hired by its customers to manage, unload, and package freight for distribution to retail stores. To that end, Defendant employees, in this case the Class Members, work in warehouses throughout the State of California, unload freight from trucks at these warehouses/distribution centers, and then package the freight for further transport elsewhere to their final destinations

Plaintiff and the Class Members are and were employed by Defendant. In October 2020, Plaintiff was hired by Defendant as a lumper tasked with unloading freight from trailers brought in via semi-truck, and sorting the freight by product line, and then loading the freight onto pallets for distribution at retail stores. Plaintiff was assigned to work in Venice, California. At all times, she worked at the warehouse of Ralphs Grocery Stores, one of Defendant's clients. Her hours were typically from 6

p.m. to 6 a.m. Defendant paid Plaintiff $15 per hour until she was terminated in December 2020.

**B.** **The Claims Asserted by Plaintiff in This Case, and Procedural History**

   1. *Claims asserted by Plaintiff.*

Plaintiff asserts claim against Defendant on behalf of the Class. Plaintiff's Complaint asserted multiple causes of action against Defendant for:

(1) Failure to provide Plaintiff and her fellow employees meal periods and pay missed meal period premiums (Labor Code §§ 226.7, 512, IWC Wage Order No. 9);

(2) Failure to provide accurate wage statements to Plaintiff and her fellow employees within the four years prior to the filing of this Complaint (Labor Code § 226 and 226.3);

(3) Failure to pay all wages owed in a timely manner (Labor Code §204);

(4) Failure to pay all wages due to former employees based on the foregoing (Labor Code § 201 – 203); and

(5) Unfair competition (California Business & Professions Code §17200, *et. seq.*)

As part of this settlement, the Parties have sought leave to amend the Complaint to include the following causes of action: (1) failure to provide Plaintiff and her fellow employees meal periods and pay missed meal period premiums; (2) failure to provide Plaintiff and her fellow employees rest periods and pay missed rest period premiums; (3) failure to pay Plaintiff and her fellow employees for all hours worked; (4) failure to pay Plaintiff and her fellow employees for overtime wages; (5) failure to provide accurate wage statements to Plaintiff and her fellow employees within the four years prior to the filing of this Complaint; (6) failure to pay Plaintiff and her fellow employees all wages owed in a timely manner; (7) failure to pay all wages due to Plaintiff and other former employees based on the foregoing; (8) unlawful deductions from wages; (9) failure to maintain the requisite payroll records; (10) failure to

3

1    reimburse employees for necessary business expenses; and (11) unfair business

2    practices based on the foregoing. The Motion for Leave to Amend is filed herewith.

3    Defendant denied (and continues to deny) all of Plaintiff's claims and further

4    denied that Plaintiff could proceed on a class or representative basis in litigation.

5    ### 2. *Procedural History, Discovery, and Settlement.*

6    On March 15, 2022, Plaintiff filed her complaint before the Superior Court for

7    the County of Los Angeles. On May 9, 2022, Defendant removed this action to the

8    United States District Court for the Central District of California. On or about June 14,

9    2022, Plaintiff sent an informal discovery request to Defendant by e-mail. Defendant

10   subsequently produced, for purposes of mediation, several documents including: (1)

11   Defendant's 2018 Associate Handbook, (2) Defendant's CA Handbook Addendum, and

12   (3) Gomez Settlement Agreement. On June 28, 2022, after an all-day mediation in front

13   of the respected mediator, Lisa Klerman, Esq., the Parties have reached a tentative

14   resolution and settlement of their action. (Decl. Treglio ¶ 29).

15   The Parties initially filed their motion for preliminary approval on

16   December 5, 2022, which the Court denied without prejudice, requesting changes to the

17   Settlement Agreement, and seeking additional information from the Parties. (ECF No.

18   43). The Parties again filed their motion for preliminary approval on April 13, 2023,

19   which the Court denied without prejudice, requesting changes to the Motion for

20   Preliminary Approval, and seeking additional information from the Parties. Pursuant to

21   the Court's Order, Plaintiff is now refiling her motion with the requested information.

22   ### 3. *The Parties Completed Substantial Discovery and Investigation*

23   The Parties engaged in substantial discovery and analysis of the underlying

24   merits of Plaintiff's claims, potential damages, and possible certification. Defendant

25   produced documents, including: (1) Defendant's 2018 Associate Handbook, (2)

26   Defendant's CA Handbook Addendum, and (3) Gomez Settlement Agreement. From

27   these documents, Plaintiff created a damage model based on their own calculations.

28   Those calculations largely mirror the calculations made later by an expert.

### 4. *Mediation and Subsequent Negotiations*

The Parties participated in mediation with attorney Lisa Klerman, a third-party neutral who is experienced in mediating wage and hour class actions. During mediation, the Parties engaged in approximately ten hours of extensive and informed arm's-length negotiations. While the Parties did not settle on the day of mediation, they continued settlement negotiations after mediation, and ultimately reached a settlement in principle with the help of a mediator's proposal.

Additionally, because Plaintiff signed an arbitration agreement with Defendant that contained a representative action waiver, and the resolution of Plaintiff's PAGA claims is a component of the settlement in principle reached by the Parties, the Parties also engaged in discussions regarding renegotiation of certain terms of the Settlement Agreement in light of *Viking River Cruises, Inc. v. Moriana*, U.S. Supreme Court Case No. 20-1573, where the Supreme Court granted certiorari to decide "[w]hether the Federal Arbitration Act requires enforcement of a bilateral arbitration agreement providing that an employee cannot raise representative claims, including under PAGA." *See* Petition for a Writ of Certiorari, *Viking River Cruises, Inc. v. Moriana*, 2021 WL 1944938; *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 734, 2021 WL 5911481 (2021). Recognizing the critical opportunity to resolve the matter for the benefit of both the putative class and Defendant, the ensuing settlement negotiations were non-collusive, adversarial, and at arm's length, as required for appropriate class and representative action settlements. Plaintiff, the Class and its counsel, on the one hand, and Defendant and its counsel, on the other hand, agree that the Settlement is reasonable, fair and equitable to both sides.

### 5. *Information on Other Pending Matters*

The Court requested information on the other pending matters. As part of the mediation process, and determination to resolve this action, the Parties discussed overlapping matters against Defendant that are still pending, which include: *Devine v. Capstone Logistics, LLC, et al.,* Case No. 20STCV39030 (Los Angeles Country

Superior Court); *Escobar v. Capstone Logistics*, LLC, et al., Case No. STK-CV-UOE-2020-0009429 (San Joaquin County Superior Court); *Barba v. Capstone Logistics, LLC*, et al., Case No. RG21100895 (Alameda County Superior Court); and *Torres, et al. v. Capstone Logistics, LLC,* Case No. 5:22-cv-00228 (Central District of California). (Maatman Decl. ¶ 8.)  All of these pending matters involve factual allegations related to Defendant's pay practices and policies and assert claims similar to those asserted in this case.  (Id. at ¶ 9.)  In recognition of that fact, two of the matters were stayed pursuant to the doctrine of exclusive concurrent jurisdiction, in favor of the earlier filed matters, and the third has agreed to resolve his claims on an individual basis to avoid a motion to stay. (Id.)

In the first-filed case, *Devine,* the court compelled plaintiff's individual claims to arbitration and stayed his representative claims.  Plaintiff asserted a PAGA claim against Defendant for alleged (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to indemnify employees for necessary expenditures incurred in discharge duties; (6) failure to furnish accurate itemized wage statements; (7) failure to timely pay all wages due to discharged and quitting employees; (8) engagement in unlawful, unfair or fraudulent business acts or practices; and (9) failures to comply with Labor Code and IWC Wage Order No. 9-2001 provisions.  (Id. at ¶ 10.)  On January 19, 2023, the *Devine* court entered a ruling on Capstone's Motion to Compel Arbitration finding that the plaintiff's individual PAGA claim must be compelled to arbitration; and the representative portion of the plaintiff's PAGA claim is stayed pending the California Supreme Court's decision in *Adolph v. Uber Technologies Inc*. (Id. at ¶ 11.)

The second-filed matter, *Escobar,* alleges that Defendant failed to provide itemized wage statements in violation of the California Labor Code, and the plaintiff seeks to bring his claims on behalf of himself and all other non-exempt employees who worked in California.  (Id. at ¶ 12.)  That matter is stayed pending resolution of Devine.

(Id.) The third-filed matter, *Barba*, alleges claims similar to *Devine and Escobar*, and *Barba* is likewise stayed pending the resolution of *Devine and Escobar.* (Id. at ¶ 13.) The *Torres* matter is pending in the Central District of California. Although the *Torres* matter was brought as a class action and PAGA suit alleging violations very similar to *Devine,* to avoid a motion to stay, the parties in *Torres* have agreed to resolve the matter on an individual basis and are engaged in settlement negotiations to that effect. (Id. at ¶ 14.)

The evaluation of these other matters, the informal discovery, and the prior settlement, during the mediation clarified for the parties and the mediator the scope of the current action, and helped the parties ensure that the Settlement Agreement covered the appropriate causes action relevant to the class members in this case. (Id. at ¶ 16.)

## III. SUMMARY OF THE SETTLEMENT TERMS

### A. Composition of the Settlement Class

The Class or Settlement Class consists of all current and former employees who worked for Capstone within the State of California in a non-exempt position at any time from August 1, 2019 through the Preliminary Approval Date, and all non-exempt former employees who worked for Capstone within the State of California at any time from August 1, 2019 through the Preliminary Approval Date but were no longer employed at the Effective Date.

### B. Settlement Consideration and Calculation of Settlement Payments

Plaintiff and Defendant have agreed to settle all class claims and representative claims alleged in the Action in exchange for the Gross Settlement Amount ("GSA") of **$1,400,000.00**. The GSA includes: (1) settlement payments to Participating Class Members; (2) a requested **$350,000.00** in attorneys' fees (or one-fourth of the GSA), and up to **$25,000.00** in litigation costs/expenses to Class Counsel; (3) **$40,000.00** allocated to settle PAGA claims, of which a $30,000.00 payment will be made to the LWDA to account for the LWDA's 75% portion of the PAGA penalties; (4) fees and expenses of the Settlement Administrator, not to exceed **$35,000.00**; and (5) a requested

Plaintiff's Service Award of **$20,000.00**. (Treglio Decl., Ex. A, Settlement Agreement at ¶¶ 8, 11-13). Based on the above, the Net Settlement Amount ("NSA") is estimated to be **$930,000.00**.[12]

Subject to the Court approving attorneys' fees and costs, the payment to the LWDA, Settlement Administrator, and Plaintiff's Service Award, the NSA will be distributed to all Participating Class Members, and will be apportioned among Settlement Class Members based on whether the Settlement Class Member qualifies as a PAGA Member in addition to being a Class Member. (Treglio Decl. ¶ 5) *Because the GSA is non-reversionary, 100% of the NSA will be paid to Participating Class Members without the need to a submit claim for payment.* (Treglio Decl., ¶ 6)

The proposed $1,400,000.00 non-reversionary, class and representative action settlement of this wage and hour case was achieved after extensive negotiations. This entire Settlement will provide monetary payments to at least 12,542 Class Members with an average gross settlement award to class members in the amount of approximately $74, an eminently reasonable sum. This recovery is in the range of other wage and hour class action settlements approved by California state and federal courts, and well within the range of what was approved in an earlier settlement, *Gomez v. Pinnacle*.[3]

---

[1] Any amounts not awarded as attorneys' fees and costs, Service Payment, payment to the LWDA or Settlement Administration Costs will be added to the amount payable to the class.

[2] Plaintiff shall provide information regarding the employer side payroll taxes in its June 2, 2023 amended filing. However, the Parties anticipate, however, that the total employer payroll taxes will be less than $40,000 for the total class, as only half of the total amount will be subject to payroll taxes.

[3] See, e.g., *Lim v. Victoria's Secret Stores, Inc*., Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.,* Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20); D*elgado v. New Albertson's, Inc.,* Case No. SACV08-806 DOC-RBNx (C.D. Cal.) (average net recovery of approximately $45).

**C. Release by the Settlement Class**

        1. *Settlement Mechanics*

Within 21 calendar days of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with a database that contains the name, last-known residence phone number, last-known residence mailing address, and social security number of each person within the Settlement Class. *Settlement* ¶ 14.a. Defendant shall also provide the Claims Administrator with the number of workweeks each person worked during the Class Period for Defendant as a non-exempt employee in California, from August 1, 2019, through the end of the Class Period. *Id.* Upon its receipt of the list of names and last known addresses of each Class Member, the Settlement Administrator shall send a Notice of Class Action Settlement and Request for Exclusion Form attached as Exhibit A to the Settlement Agreement to Class Members via First Class U.S. Mail, using the most current, known mailing address for each Class Member based on information provided by Defendant. *Id.* ¶ 14.b. This mailing shall occur no later than twenty-one (21) calendar days after receiving the Class Member data from Defendant. Upon receipt of this information from Defendant, the Settlement Administrator shall perform a search based on the National Change of Address Database maintained by the United States Postal Service to update and correct any known or identifiable address changes. *Id.* The Class Notice shall contain an easily understood statement alerting the Class Members that, unless they elect to opt-out of the Settlement, the Class Member is releasing and waiving all Released Claims against Defendant and will be issued a check reflecting his or her Individual Settlement Amount following Final Approval of the Settlement. No submission of a Claim Form will be required for Class Members to receive their Settlement Shares. Class Members shall be given the opportunity to exclude themselves or opt out of the Settlement Class. They shall not be permitted to opt out of the PAGA Settlement Group. *Id.* ¶ 14.e.

Any Class Member may elect to opt out of the Settlement by submitting a Request for Exclusion Form from the Settlement to the Settlement Administrator that is

1  signed and dated. *Id.* ¶ 14.f. Per the Court's Request, that form is attached at Exhibit A

2  to the Settlement Agreement. To be timely, all such Requests for Exclusion must be

3  postmarked no later than forty-five (45) calendar days after the date the Settlement

4  Administrator initially mails the Class Notice to the Class Members. *Id.* Any Request

5  for Exclusion that does not include all of the required information or that is not

6  submitted in a timely manner will be deemed null, void, and ineffective. *Id.* ¶ 14.g.

7      If there is a dispute regarding the timeliness or validity of a Request for

8  Exclusion, the Settlement Administrator shall make the determination, after

9  consultation with Class Counsel and Defendant's Counsel. *Id.* Any Class Member who

10 opts out of the Settlement may not object to the Settlement, shall not receive any

11 portion of the Net Class Settlement Fund as part of his or her Individual Settlement

12 Payment, and shall not be bound by the Class Claims Released. *Id.* ¶ 14.h. If a Class

13 Member submits both a Request for Exclusion and an Objection, the Class Member's

14 Objection will be valid and be deemed to invalidate the Request for Exclusion. *Id.*

15 Each Class Member who does not opt out of the Settlement shall be bound by the

16 applicable Released Claims provisions in the Settlement, including the Class Claims

17 Released. *Id.*

18     Because the Class will be certified by the Court, only Class Members who do not

19 opt out of the Settlement shall be entitled to object to the terms of the Settlement. *Id.* ¶

20 14.i. Class Members' objections to the Settlement or this Agreement must be made

21 using the procedures set forth in the Notice of Class Action Settlement. *Id.* ¶ 14.j. As

22 the Court has requested, any Objection must be sent to the Settlement Administrator

23 and to the Court, and must be postmarked and received by the Claims Administrator

24 and Court no later than 45 days after the first date of mailing of the Notice of Class

25 Action Settlement. *Id.* Class Members who timely submit an Objection may be subject

26 to deposition must be available for deposition if Plaintiff or Defendant chooses to take

27 their deposition and receives permission from the Court to do so. *Id.* ¶ 14.k. Any Class

28 Member who timely submits an Objection and refuses to be available for deposition

shall be deemed to have withdrawn his or her Objection. *Id.* Only Class Members who timely submit a valid Objection shall have the right to appear at the Final Fairness Hearing, and may do so either in person or through counsel, but must state their intent to do so at the time they submit their written Objection. *Id.* Class Members may withdraw their Objection at any time. *Id.* Class Members who fail to make an Objection in the manner specified in the Notice of Class Action Settlement shall be deemed to have waived their Objection and shall be foreclosed from opposing this Settlement or making any Objection, whether by appeal or otherwise. *Id.* ¶ 14.l.

2. *The Release of Plaintiff and Class Members*

a.    *Class Claims Released*

Upon final approval of the Settlement, each member of the Class who did not submit a timely and valid Request for Exclusion Form shall be considered to have released forever Defendant, and each of its past, present, and future agents, employees, servants, officers, directors, business partners, clients, trustees, representatives, shareholders, stockholders, attorneys, parents, subsidiaries, equity sponsors, related companies/corporations, and/or partnerships, divisions, assigns, predecessors, successors, insurers, consultants, joint venturers, joint employers, affiliates, alter-egos, and affiliated organizations, and all of their respective past, present and future employees, directors, officers, agents, attorneys, stockholders, fiduciaries, parents, subsidiaries, and assigns, and each of them (collectively, with Defendant, the "Released Parties"), from any and all claims that were asserted in the operative complaint filed in the Action or any claims that could have been asserted based on or arising out of the allegations or facts alleged, irrespective of the theory of recovery ("The Released Claims").  See Settlement ¶ 20. This release shall apply to all Released Claims arising at any point prior to the end of the Class Period. *Id.* Class Members who have not submitted a timely and valid Request for Exclusion Form may hereafter discover facts in addition to or different from those they now know or believe to be true; however, upon final approval, all Class Members who have not submitted a timely and valid

11

Request for Exclusion Form shall be barred from pursuing against any of the Released Parties and shall be deemed to have, and by operation of the final judgment shall have, fully, finally, and forever settled and released any and all of the Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, without regard to the subsequent discovery or existence of such different or additional facts. *Id.*

     *b. PAGA Claims Released*

     Upon approval of the Settlement, each member of the PAGA Representative Group and the LWDA shall fully release and forever discharge the Released Parties, from any and all PAGA claims that are asserted in, arise from, or reasonably relate to the factual allegations and legal assertions made in the operative complaint and amended PAGA notice. *Id.* ¶ 21. The PAGA Released Claims include all PAGA claims that were asserted in the complaints filed in the Action or any PAGA claims that could have been asserted based on or arising out of the allegations or facts alleged, irrespective of the theory of recovery, including all PAGA claims for civil penalties relating to, based upon, or arising out of the Released Parties' alleged failure to pay all wages due, provide minimum wages or pay for all hours worked, failure to pay straight time, overtime, or double-time compensation, failure to properly calculate the regular rate of pay, failure to provide meal and/or rest breaks, failure to pay proper meal or rest period premiums, failure to keep accurate records, failure to provide and maintain accurate itemized wage statements, failure to keep accurate employee payroll records, failure to timely pay wages due during or at separation of employment, failure to reimburse all business-related expenses, and improper or unauthorized deductions (collectively, the "PAGA Released Claims"), against the Released Parties. *Id.* Upon approval, Plaintiff, each member of the PAGA Representative Group, and the LWDA will be forever barred from pursuing against the Released Parties and shall be deemed to have, and by operation of the final judgment shall have, fully, finally, and forever settled and released any and all of the PAGA Released Claims alleged or that could

have been alleged to have been violated in, or are reasonably related to, the Action, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, without regard to the subsequent discovery or existence of different or additional facts. *Id.*

### c. *Additional Release by Class Representative*

In addition to the Class Release, Ms. Verdugo will also release any and all claims against Defendant and each of the Released Parties. This general release includes any and all claims arising from the employment relationship with Defendant or any of the Released Parties, including, without limitation, claims for wrongful termination, discrimination, harassment, or retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000 et seq., the California Fair Employment and Housing Act, Cal. Gov't Code Section 12900 et seq, or the California Labor Code. *Id.* ¶ 22. This general release by the Class Representative also includes a waiver of California Civil Code Section 1542. *Id.* The Class Representative expressly waives all rights provided by California Civil Code Section 1542, or other similar statutes, that the Class Representative may have against Defendant and each of the Released Parties. *Id.* This additional release applies only to Ms. Verdugo, and not any of the Class Members.

### 3. *Uncashed Checks*

In the event that a Class Payment check is not negotiated within 180 calendar days from the date initially mailed by the Settlement Administrator, the Settlement Administrator will tender those uncashed checks to the State of California's Controller's Office to be held as "Unclaimed Property" in the name of the Class Member. *Id.* ¶ 19.c.

## IV.    THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED SETTLEMENT CLASS

Plaintiff seeks conditional certification of the Class. A party seeking to certify a class must demonstrate that it has met the "four threshold requirements of Federal Rule of Procedure 23(a): (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy

13

1    of representation." *Levya v. Medline Indus, Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

2    Once these prerequisites are satisfied, a court must consider whether the proposed class

3    can be maintained under at least one of the requirements of Rule 23(b). *Wal-Mart*

4    *Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Plaintiff, here, seeks certification

5    pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to

6    class members predominate over any questions affecting only individual members, and

7    that a class action is superior to other available methods for fairly and efficiently

8    adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The present case satisfies all of

9    these requirements with respect to Plaintiff's claim for failure to provide meal periods

10   (at the correct rate, in part, or at all), which is the only claim being settled on a class-

11   wide basis.

12   **A.  The Settlement Class and Subclasses are Sufficiently Numerous and**

13   **Ascertainable.**

14   Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is

15   impracticable[.]" Fed. R. Civ. P. 23(a)(1). There are approximately 12,542 Class

16   Members. With respect to Plaintiff's meal period claim, all Class Members were

17   subject to Defendant's alleged common policies and practices of requiring Class

18   Members to work beyond their sixth hour causing them to take their meal periods late

19   most of the time.

20   **B. There Are Questions of Law and Fact Common to the Class.**

21   Rule 23(a)(2) requires the existence of questions of law or fact common to the

22   class[.] Fed. R. Civ. P. 23(a)(2). "[F]or purposes of Rule 23(a)(2) even a single

23   common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359, 131 S.

24   Ct. 2541, 2556, 180 L. Ed. 2d 374 (2011) (internal quotation marks and brackets

25   omitted); *see Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (finding it is not

26   necessary "that every question in the case, or even a preponderance of questions, is

27   capable of class wide resolution. So long as there is even a single common question, a

28   would-be class can satisfy the commonality requirement of Rule 23(a)(2)." (internal

14

1  quotation marks omitted)). Commonality requires the plaintiff to demonstrate that the

2  class members have suffered the same injury but "[t]his does not mean merely that they

3  have all suffered a violation of the same provision of law." *Wal-Mart Stores*, 564 U.S.

4  at 349-50 (internal quotation marks omitted).

5      Rather, "[t]hat common contention . . . must be of such a nature that it is capable

6  of classwide resolution—which means that determination of its truth or falsity will

7  resolve an issue that is central to the validity of each one of the claims in one stroke."

8  *Id.*

9      The commonality requirement is satisfied in this action. Here, Plaintiff and the

10  Class Members were all subject to the same meal period and rest period policies, the

11  same security check policies, and the same timekeeping and payrolling practices that

12  are at the heart of this action. For settlement purposes, the common questions raised

13  include: (1) whether Defendants violated Labor Code sections 512 and 226.7, and

14  section 11 of IWC Wage Order No. 9 by failing to pay one hour of premium pay to

15  each member of the Class for each day that an unpaid meal break was not provided

16  during the Class Period; (2) whether Defendants violated Labor Code sections 204 and

17  210 by failing to pay Plaintiff and the Class Members all wages owed with seven days

18  of the close of payroll;  (3) whether Defendants violated Section 203 of the Labor Code

19  by failing to pay members of the Waiting Time Penalty Subclass (those class members

20  who have terminated their employment with the Defendants) for all wages due to them

21  (including their pay due for unpaid rest breaks) upon their separation of employment

22  from Defendant; (4) Whether Defendants failed to provide Plaintiff and the Class

23  Members complete wage statements in violation of Labor Code Section 226(a); (5)

24  whether Defendants violated Labor Code sections 221, 222, 222.5, 223, 224, 225, and

25  225.5 for subjecting Plaintiff and Class Members to unlawful deductions from their

26  pay; (6) whether Defendants violated sections 1194, 1194.2, and 1198 of the Labor

27  Code by failing to pay Plaintiff and the members of the Class for all wages owed during

28  the Class Period; (7) whether Defendants violated Sections 510, 1194, 1194.2, and

1198 of the Labor Code and IWC Wage Order No. 9 during the Class Period by failing
to pay Plaintiff and the Class Members all overtime wages owed; (8) whether
Defendants engaged in an unfair practice and violated section 17200 of the California
Business and Professions Code by failing to provide off-duty meal breaks to members
of the Class in violation of Labor Code sections 512, 226.7 and Section 11 of IWC
Wage Order No. 9; (9) whether Defendants engaged in an unfair practice and violated
section 17200 of the California Business and Professions Code by failing to pay
Plaintiff and the members of the Class for all wages and overtimes wages owed during
the Class Period; (10) whether Plaintiff and the Class are entitled to restitution under
Business and Professions Code § 17200;  (11) the proper formula(s) for calculating
damages, interest, and restitution owed to Plaintiff and the Class Members; and (12) the
nature and extent of class-wide damages. Here, because Defendant's policies and
practices, and the common questions of law and fact that they raise, apply uniformly to
each and every Class Member, certification is appropriate of the entire Class for
settlement purposes.

### C. The Representative Plaintiff's Claims Are Typical of the Claims of the Class and Subclasses.

Rule 23(a)(3) requires the representative parties' claims or defenses be "typical
of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "Under the
'permissive standards' of this Rule, "representative claims are 'typical' if they are
reasonably co-extensive with those of absent class members; they need not be
substantially identical." *Galvan v. KDI Distrib., Inc.*, No. 08-CV-0999-JVS-ANX, 2011
WL 5116585, at *6 (C.D. Cal. Oct. 25, 2011) (quoting *Hanlon v. Chrysler Corp.*, 150
F.3d 1011, 1020 (9th Cir. 1988)). Here, Plaintiff and the Class Members all worked for
Defendant as nonexempt employees in California, and Plaintiff contends that they were
all subject to the same allegedly non-compliant policies and practices with respect to
meal periods, rest periods, timekeeping and payrolling practices. For example, Plaintiff
alleges that Defendant's customers uniformly required Class Members undergo security

16

checks before entering and exiting warehouse facilities, affecting meal periods, rest periods, regular time, overtime, and wage statements. As a result, Plaintiff argues that she and Class Members have suffered the same or similar injuries resulting from the same or similar conduct by Defendant and thus, the typicality requirement is satisfied for settlement purposes.

### D. Plaintiff and Plaintiff's Counsel Will Adequately Represent the Class.

A class representative must be able to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether this requirement is met, the Ninth Circuit applies a two-pronged test: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 462 (9th Cir. 2000). Both requirements are met here. Plaintiff has no conflict of interest with other Class Members and his interests are aligned with those of the Class Members, as he has vigorously represented the Class Members in seeking recovery for various alleged wrongdoings on their behalf. (Treglio Decl., ¶ 36) Plaintiff's counsel also has no conflict of interest with Class Members and seeks to recover compensation on their behalf. (*Id.*) Plaintiff's counsel has significant experience in prosecuting wage and hour class actions, and has previously been appointed as class counsel in numerous similar cases. (*Id.* at ¶¶ 30-36)

### E. The Class Can Be Conditionally Certified Because the Requirements of FRCP Rule 23(b)(3) Are Satisfied.

A class may be certified under Rule 23(b)(3) when "questions of law or fact common to the class members predominate over any questions affecting only individual members" and the class action mechanism is "superior" to other methods of adjudicating the controversy. Fed. R. Civ. Proc. 23(b)(3). Here, both prongs of the Rule 23(b)(3) analysis are satisfied.

1

### 1. *Common Issues of Law and Fact Predominate*

"The predominance inquiry ... asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011). "The focus is on the relationship between the common and individual issues." *Id*. Here, the proposed Class is sufficiently cohesive to warrant certification of Plaintiff's claims for settlement purposes. The following common issues arise from Defendant's uniform policies and practices with respect to meal periods and predominate over individual employee issues: (1) whether Defendants violated Labor Code sections 512 and 226.7, and section 11 of IWC Wage Order No. 9 by failing to pay one hour of premium pay to each member of the Class for each day that an unpaid meal break was not provided during the Class Period; (2) whether Defendants violated Labor Code sections 204 and 210 by failing to pay Plaintiff and the Class Members all wages owed with seven days of the close of payroll; (3) whether Defendants violated Section 203 of the Labor Code by failing to pay members of the Waiting Time Penalty Subclass (those class members who have terminated their employment with the Defendants) for all wages due to them (including their pay due for unpaid rest breaks) upon their separation of employment from Defendant; (4) Whether Defendants failed to provide Plaintiff and the Class Members complete wage statements in violation of Labor Code Section 226(a); (5) whether Defendants violated Labor Code sections 221, 222, 222.5, 223, 224, 225, and 225.5 for subjecting Plaintiff and Class Members to unlawful deductions from their pay; (6) whether Defendants violated sections 1194, 1194.2, and 1198 of the Labor Code by failing to pay Plaintiff and the members of the Class for all wages owed during the Class Period; (7) whether Defendants violated Sections 510, 1194, 1194.2, and 1198 of the Labor Code and IWC Wage Order No. 9 during the Class Period by failing to pay Plaintiff and the Class Members all overtime wages owed; (8) whether Defendants engaged in an unfair practice and violated section 17200 of the California Business and Professions Code by failing to provide off-duty meal breaks to members of the Class in violation of Labor Code sections 512, 226.7

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE
ACTION SETTLEMENT

and Section 11 of IWC Wage Order No. 9; (9) whether Defendants engaged in an unfair practice and violated section 17200 of the California Business and Professions Code by failing to pay Plaintiff and the members of the Class for all wages and overtimes wages owed during the Class Period; (10) whether Plaintiff and the Class are entitled to restitution under Business and Professions Code § 17200;  (11) the proper formula(s) for calculating damages, interest, and restitution owed to Plaintiff and the Class Members; and (12) the nature and extent of class-wide damages. As such, the questions of law and fact that are common to the Class predominate over individual issues.

      2. *The Class Action Mechanism is Superior to Any Other Methods of Adjudication*

      Given the size of the Class, it is clear that the "superiority" element is satisfied. The fact that more than 12,542 individual claims "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs" weighs heavily in favor of a class resolution. *See Hanlon*, 150 F.3d at 27 1023.

## V.    THE PROPOSED CLASS ACTION SHOULD RECEIVE PRELIMINARY APPROVAL AS IT MEETS ALL OF THE REQUIREMENTS OF RULE 23

      Recent amendments to Rule 23 now clarifies that preliminary approval should be granted where the parties have "show[n] that the court will likely be able to ... approve the proposal under [the final approval factors in] Rule 23(e)(2)." Fed. R. Civ. Proc. 23(e)(1)(B). Accordingly, for the purposes of this motion, Plaintiff shall provide a discussion of the factors informing final approval, namely, whether:

        (A)    the class representatives and class counsel have adequately represented the class;

        (B)    the proposal was negotiated at arm's length;

        (C)    the relief provided for the class is adequate, taking into account:

            (i)    the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)  any agreement required to be identified under Rule 23(e)(3).

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. Proc. 23(e)(2). As explained below, each of these factors is met here, and so preliminary approval is appropriate.

**A.   The Class Representative and Class Counsel Have Adequately Represented the Class.**

As discussed above, Plaintiff and his counsel have adequately represented the Class. Therefore, this requirement is satisfied.

**B. The Settlement Is the Product of Arms-Length Negotiations and Is Therefore Entitled to a Presumption of Fairness.**

"Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.* ("*Volkswagen*"), 2016 WL 4010049, *14 (N.D. Cal. July 26, 2016). Here, the Parties participated in a full-day mediation session with Lisa Klerman, an experienced wage and hour mediator, and engaged in subsequent follow-up discussions with Ms. Klerman after an almost ten-hour mediation. At all times, the Parties' negotiations were adversarial and non-collusive. This participation weighs considerably against any inference of a collusive settlement. *See In re Apple Computer, Inc. Derivative Litig.*, No. 06-CV- 8 4128-JF-HRL,    2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008).

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. Plaintiff was represented by Potter Handy LLP a firm that regularly litigates wage and hour claims, and has considerable experience

settling wage and hour class actions. (*See* Treglio Decl. ¶¶ 30-36) Defendant was
represented by Duane Morris LLP, which operates a highly-respected nationwide class
action defense practice. Moreover, no indicia of potential collusion exists here where
there is no reversion to Defendant, no disproportionate service payment to Plaintiff as
class representative, and no disproportionately large attorneys' fee award. Therefore,
the Settlement should be preliminarily approved for settlement purposes.

### C. The Relief Provided to the Class Is Adequate.

The third factor requires the Court to consider whether "the relief provided for
the class is adequate, taking into account: (i) the costs, risks, and delay of trial and
appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,
including the method of processing class-member claims; (iii) the terms of any
proposed award of attorney's fees, including timing of payment; and (iv) any
agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 26
23(e)(2)(C).

### 1. *Costs, Risks, and Delay of Trial and Appeal*

In accordance with Rule 23(e)(2)'s instruction to evaluate "the costs, risks, and
delay of trial and appeal," courts assess "the strength of the plaintiffs' case; the risk,
expense, complexity, and likely duration of further litigation; [and] the risk of
maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. This
inquiry evaluates "plaintiffs' expected recovery balanced against the value of the
settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080. During this
matter's pendency, Class Counsel thoroughly investigated and researched the claims in
controversy, and the defenses. The investigation entailed the exchange of information
pursuant to substantial informal discovery. In the course of such discovery, Class
Counsel received and analyzed adequate information to properly investigate and
evaluate the claims, including: Defendant's employment policies and procedures
relating to the meal periods, shifts, and wage statements. The extensive document and

1   data exchanges have allowed Class Counsel to appreciate the strengths and weaknesses
2   of the claims alleged against the benefits of the proposed Settlement.

3        2.  *Defendant Has Asserted Defenses Creating Risk that the Class Will*
4        *Receive No Recovery If the Claims at Issue Are Not Settled*

5        Throughout this litigation, Defendant has indicated that it intends to vigorously
6   contest the forum of this litigation, class certification, PAGA manageability, and
7   Plaintiff's claims on the merits. While Plaintiff does not agree with Defendant's
8   arguments regarding arbitration, class certification, PAGA manageability, or
9   Defendant's defenses on the merits to Plaintiff's claims, Plaintiff recognizes that there
10  is a risk that the Court and/or a jury will agree with Defendant, and thus, limit or
11  eliminate Class Members' ability to recover on the claims at issue.

12       With respect to all of Plaintiff's claims, Defendant contended that an arbitration
13  agreement required arbitration of Plaintiff's individual claims and dismissal of
14  Plaintiff's class and representative claims.[4] Defendant also advanced arguments as to
15  the merits of Plaintiff's meal period claims.

16       With respect to Plaintiff's meal period claim, as a result of its meal period
17  policies of requiring Plaintiff and the Class Members to work beyond their sixth hour
18  and to take their meal breaks late, Defendant violated Labor Code § 512 and IWC
19  Wage Order No. 9 by failing to provide duty-free meal periods to Plaintiff and the
20  Class Members of 30 minutes or more, and are liable to Plaintiff and the Class.

21       As a result of the unlawful acts of Defendants, Plaintiff and the Class were not
22  provided timely duty-free meal breaks, and are entitled to recovery under Cal. Labor
23  Code § 226.7 in the amount of one additional hour of pay at the employee's regular rate
24  of compensation for each work period greater than 5 hours in California during each

25
26

27  _____

[4] Plaintiff's arbitration agreement contains a representative action waiver, and as mentioned above, the U.S. Supreme
28  Court will soon decide the enforceability of such waivers in *Viking River Cruises, Inc. v. Moriana*, U.S. Supreme Court Case
No. 20-1573

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE
ACTION SETTLEMENT

1    day in which Defendants failed to provide employees with timely duty-free meal

2    periods as required by California law.

3        Defendant required Plaintiff and other class members to work four (4) or more

4    hours without authorizing or permitting a ten (10) minute rest period per each four (4)

5    hour period worked. Defendant willfully required Plaintiff and the other class members

6    to work during rest periods and failed to pay Plaintiff and the other class members the

7    full rest period premium for work performed during rest periods.

8        Defendants required Plaintiff and the class members to work certain hours off the

9    clock. Although this was related to their employment with Defendants and they often

10   had to work beyond 40 hours per week because of this, Defendants never paid Plaintiff

11   and the class members for time spent working off the clock nor were they paid for

12   overtime work. As a result, Plaintiff and the Class Members are not compensated for all

13   hours worked in violation of Labor Code § 1194.

14       Defendants' "wage statements" failed to comply with either section 226 or 226.2.

15   First, Defendants failed to identify themselves as the employer. Second, Defendants'

16   "wage statements" also did not include total hours worked, the total amount of time

17   spent on rest periods and other nonproductive tasks, and all applicable hourly rates in

18   effect during the pay period and the corresponding number of hours worked at each

19   hourly rate in violation of Labor Code Sections 226(a) and 226.2.

20       By virtue of its unlawful meal period policies, Defendants willfully failed to pay

21   Plaintiff and other members of the Waiting Time Penalty Subclass (i.e., those members

22   of the Class whose employment with Defendants ended the actionable period for this

23   cause of action) who are no longer employed by Defendants for all time worked and all

24   wages owed prior to or upon termination or separation from employment with

25   Defendants as required by California Labor Code §§ 201 and 202.

26       Defendants also failed to pay Plaintiff her final wages when she was terminated

27   in December 2020. To date, Plaintiff has yet to receive her final check from

28   Defendants.

1    Defendant has intentionally and willfully failed to keep accurate and complete

2    payroll records showing the hours worked daily and the wages paid to Plaintiff and the

3    other class members.

4    As a result of Defendant's violation of California Labor Code§ 1174(d), Plaintiff

5    and the other class members have suffered injury and damage to their statutorily

6    protected rights.

7    As a direct and proximate result of Defendants' unlawful business practices,

8    Plaintiff and the Class Members have suffered economic injuries.  Defendants have

9    profited from their unlawful, unfair, and/or fraudulent acts and practices.

10    Plaintiff and similarly situated Class Members are entitled to monetary relief

11    pursuant to Business & Professions Code §§ 17203 and 17208 for, *inter alia*, all unpaid

12    meal period premiums, due and interest thereon, from at least four years prior to the

13    filing of this complaint through to the date of such restitution, at rates specified by law.

14    Defendants should be required to disgorge all the profits and gains it has reaped and

15    restore such profits and gains to Plaintiff and Class Members, from whom they were

16    unlawfully taken.

17    Plaintiff's counsel contracted with Eric Lietzow of the Desmond, Marcello &

18    Amster (DM&A) to review the damage calculations made prior to the mediation.

19    Plaintiff summarizes her risks, claims and potential recoveries as follows:

20    *a. Defendant's Arbitration Agreements with Plaintiff and the Class Members*

21    The biggest risk to class-wide recovery was the existence of an arbitration

22    agreement between the Defendant and the Class Members. As outlined in Defendant's

23    motion to compel arbitration, (ECF No. 31), all employees sign a form arbitration

24    agreement as a condition of employment. (ECF No. 31-2, Ex. 3, pp. 12-14). (Treglio

25    Decl. ¶ 11). This arbitration agreement explicitly includes a waiver of all collective or

26    class claims. (ECF No. 31-2, at p. 13). As discussed at length in Defendant's Motion to

27    Compel Arbitration (ECF No. 31-1), the threat of individual arbitration was particularly

28    strong. While it is true that cases such as *Southwest Airlines Co. v. Saxon*, No. 21-309,

2022 WL 1914099 (June 6, 2022), *Waithaka v. Amazon.com, Inc.,* 966 F.3d 10 (1st Cir. 2020), cert. denied, No. 20-1077, 2021 WL 2519107 (U.S. June 21, 2021), and *Rittmann v. Amazon.com, Inc.,* 971 F.3d 904 (9th Cir. 2020), cert. denied, 141 S. Ct. 1374 (2021), all indicate that Plaintiff, and the Class Members, who were employed as warehouse workers, could be deemed exempt from the Federal Arbitration Act, there was a substantial risk that the Court would disagree, or the issue would be subject to protracted litigation. And, as noted above, at least one Court has determined that the claims of Plaintiff and the Class Members are subject to individual arbitration. *Id.* As a result, Plaintiff discounted all of her claims. *Id.*

   b. *Off the Clock Work Related to Security Screenings*

   Going on to the claims at issue, each presented its own problems. The strongest claim going forward was the off the clock claim. While not part of the original complaint, Plaintiff Andrea Verdugo provided information to me in preparation for the mediation that she, and other Class Members, were uniformly subject to security checks made prior to clocking into or out of their work locations. Ultimately, this particular information was important in assisting the Class in resolving this case. As the Court is aware, numerous Courts have certified such actions. (See *Heredia v. Eddie Bauer LLC* (N.D. Cal., Jan. 10, 2018, No. 16-CV-06236-BLF) 2018 WL 369032, at *11; *Ulta Salon, Cosmetics & Fragrance, Inc.* (C.D. Cal. 2015) 311 F.R.D. 590, 605; *Ceja-Corona v. CVS Pharmacy, Inc.* (E.D. Cal., Jan. 14, 2015, No. 1:12-CV-01868-AWI-SA) 2015 WL 222500, report and recommendation adopted (E.D. Cal., Mar. 3, 2015, No. 1:12-CV-01868-AWI) 2015 WL 925598; *Otsuka v. Polo Ralph Lauren Corp.* (N.D. Cal. 2008) 251 F.R.D. 439, 445; *Cervantez v. Celestica Corp.* (C.D. Cal. 2008) 253 F.R.D. 562, 572; *Frlekin v. Apple Inc.* (N.D. Cal. 2015) 309 F.R.D. 518; *Hamilton v. Wal-Mart Stores, Inc.* (C.D. Cal., Aug. 21, 2018, No. EDCV1701415ABKKX) 2018 WL 4813082, at *5 ("whether the time spent walking from the clock to the security line or passing through the security line is considered 'hours worked' is a common question

1   that can and should be resolved as to all class members").) (Treglio Decl. ¶ 13). Thus,

2   as part of the negotiations, Plaintiff negotiated with an eye toward this claim as well. *Id.*

3          However, as the Court is also well-aware, security checks have also been subject

4   to numerous denials of class certification where, as here, the Class Members worked

5   different shifts, at different locations, and there was evidence that security checks were

6   not uniformly completed. *Christensen v. Carter's Retail, Inc.*, 2021 WL 4932244 (C.D.

7   Cal. October 21, 2021); *Heredia v. Eddie Bauer LLC*, 2020 WL 127489 (N.D. Cal.

8   January 10, 2020); *Figueroa v. Delta Galil USA, Inc.*, 2021 WL 1232695  (N.D. Cal.

9   March 30, 2021). (Decl. Treglio ¶ 15). As a result, Plaintiff had to discount her off-the-

10  clock claims understanding the potential pitfalls. (*Id.*) As stated in Mr. Lietzow's

11  declaration, this claim had an undiscounted value of $4,669,130.80. (Decl. Lietzow ¶

12  11.) Because of the risks inherent in the action, including arbitration, class certification,

13  summary judgment, trial, and appeals, the value of this claim is discounted to just 8%

14  of its total value, or $375,930.46. (Decl. Treglio ¶ 15).

15         c. *Defendant's Failure to Provide Meal/Rest Periods*

16         IWC Wage Order 9–2001 provides that "no employer shall employ any person

17  for a work period of more than five (5) hours without a meal period of not less than 30

18  minutes." See also Cal. Labor Code §§ 226.7 and 512. (Treglio Decl. ¶ 16). Further,

19  employees must be provided with rest periods of not less than 10 minutes, paid, once

20  per four hours of work. *Id.* Where an employer fails to maintain meal period records,

21  there is a rebuttable presumption that the meal period was not provided. *Brinker Rest.*

22  *Corp. v. Superior Court,* 53 Cal. 4th 1004, 1053 (2012) (Werdeger, J., concurring);

23  *Medlock v. Host Int'l*, Inc., No. 1:12-CV-02024-JLT, 2013 WL 2278095, at *3 (E.D.

24  Cal. May 22, 2013).  IWC Wage Order No. 9, § 12 further provides that employers

25  "shall authorize and permit all employees to take rest periods." If an employer does not

26  authorize and permit the amount of rest break time called for by the applicable wage

27  order, then it has violated the wage order and is liable. *Brinker Rest. Corp*, 53 Cal. 4th

28  at 1033. *Id.*

In preparation for the mediation, Defendant provided Plaintiff with meal and rest period policies. (Decl. Treglio ¶ 17) The policies, in general, provided legally compliant meal periods and rest periods to the Class Members. (*Id.*) Further, it was likely that these meal periods, despite the legally compliant meal period policy, were affected by the security check policy. (*Id.*) Nonetheless, the challenges to class certification, the threat of being compelled into individual arbitration, and the risks inherent in such claims, such as summary judgement, trial, and appeal, called for a discount greater to the off the clock claim. (*Id.*) According to Mr. Lietzow, the value of this meal period claim was $8,964,731.16 (Decl. Lietzow ¶ 12.) At a discount of 95%, the total value of this claim for settlement purposes was $448,236.56. (Decl. Treglio ¶ 17)

Plaintiff's additional claim for rest periods was even more challenging. While there were time records to indicate whether employees took meal periods and when, no such records exist for rest periods. (Decl. Treglio ¶ 17.) Further, the fact that Defendant kept and maintained a legally compliant rest period policy made the chances of certification even smaller. (*Id.*) As a result, rest periods is discounted to 4% of their total value. *Id.* According to Mr. Lietzow, those claims were worth $8,964,731.16. (Decl. Lietzow ¶ 13.) With a 96% discount, those claims were worth $358,589.25. (Decl. Treglio ¶ 18)

d. *Defendant's Failure to Provide Accurate Wage Statements*

Finally, with regard to wage statement claims under California Labor Code § 226(a) and IWC Wage Order No. 9 require that Defendant semimonthly, or at the time of each payment of wages, to furnish Plaintiff and putative class members with accurate, itemized written statements containing all the information described in § 226 and Wage Order No. 9, § 7. (Decl. Treglio ¶ 17). Whether settlement statements comply with § 226(a) and Wage Order No. 9 can be resolved at once for the entire class. *Norris-Wilson*, 270 F.R.D. at 610 (certifying wage statement claim where overtime pay was uniformly not recorded). *Id.* According to Mr. Lietzow, the total

value of this claim was $11,765,450.00. (Decl. Lietzow ¶ 15.) At a 95% discount, the settlement value was $588,272.50. (Decl. Treglio ¶ 19.)[5]

e. *Defendant's Failure to Pay All Wages Owed Upon Termination*

With regard to the Labor Code §203 waiting time claim, an employer who willfully fails to pay an employee all wages owed upon termination is subject to a penalty of up to 30 days of pay. However, 203 penalties are only incurred when the employer willfully fails to pay all wages owed. Any legal argument that such wages are not owed is a total defense to said penalties. As described above, Plaintiff's claims were subject to numerous defenses, and as such, the odds of such penalties being awarded is virtually nil.

f. *Defendant's Failure to Provide Expense Reimbursement*

As part of the allegations, Plaintiff alleges that she was not provided with expense reimbursements in violation of Cal. Labor Code §2802. These reimbursements relate to the use of cellular phones. Per California case law, any use of a cellular phone for work purposes is supposed to be reimbursed. *Cochran v. Schwann's Home Service, Inc.,* 228 Cal.App.4th 1137 (2014). Here, the use of cellular phones was limited, and Defendant had a policy of expense reimbursement. As such, the value of such claims was low – probably less than $300,000.

g. *Defendant's Unlawful Deductions form Pay*

Finally, with regard to the unlawful deduction claims, in violation of Labor Code §§221-223, 400-410, this claim was raised in the *Devine* action, and it relates as an alternative theory to the failure to pay all wages, and the failure to pay meal period premiums. Although Plaintiff seeks to add this claim to the Complaint to cover the full scope of claims available, it does not impact the overall damages calculation. (Decl. Treglio at ¶22.)

---

[5] The statute of limitations for wage statement violations under Labor Code §226 is one year, thus, the difference in the Wage Statement Period compared to the total class period.

3. *Exposure Analysis*

<u>Damages and Penalties</u>: Based upon the information available, there were approximately 12,542 putative class members who worked since August 1, 2019. Plaintiff's counsel will provide an updated exposure calculation upon amendment on June 2, 2023. However, at mediation, Plaintiff estimated the total exposure, without 203 penalties, as being just under $95 million.

Even though Plaintiff argues that these theories of liability are certifiable, Plaintiff's counsel ascribed a low value to these theories because: (1) the Class Members all signed arbitration agreements with class action waivers; (2) there are significant risks associated with obtaining class certification on this claim; and (3) for many Class Members, their regular rate was generally similar or equal to their base hourly rate, so would have little to no resulting damages.

<u>PAGA</u>: The amount of PAGA penalties would add a modest amount to the valuation of the PAGA claims for settlement purposes. But Defendant argued that Labor Code § 2699(e)(2) expressly provides that "…a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." There is a substantial risk that the Court could significantly reduce civil penalties if it is unpersuaded by Plaintiff's evidence of willful and intentional conduct. *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 514 (2014) (PAGA penalties reduced by 90%). Moreover, approval of PAGA allocations in the class context show wide variance in the amounts determined by the Court to be fair, reasonable and adequate. *See e.g., Reed v. Thousand Oaks Toyota*, No. 56-201200419282-CU-OE-VTA, 2013 WL 8118716 (Cal. Super. Ct. Apr. 8, 2013) (class action settlement approved for $108,624, with $1,500 allocated towards PAGA penalties); *Bolton v. U.S. Nursing Corp.*, No. 12-CV-4466-LB, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013) (approving class action settlement for $1,700,000, with $15,000 allocated towards PAGA).

1    Finally, Defendant raised arbitration as a defense to Plaintiff's PAGA claims
2 because Plaintiff and the PAGA Members signed arbitration agreements with
3 Defendant that contained representative action waivers.  On December 15, 2021, the
4 United States Supreme Court granted a petition for certiorari in *Viking River Cruises,*
5 *Inc. v. Moriana*, U.S. Supreme Court Case No. 20-1573 ("Viking River"), to decide
6 "[w]hether the Federal Arbitration Act requires enforcement of a bilateral arbitration
7 agreement providing that an employee cannot raise representative claims, including
8 under PAGA." *See* Petition for Writ of Certiorari, *Viking River Cruises, Inc. v.*
9 *Moriana*, 2021 WL 1944938; Order granting Petition, *Viking River Cruises, Inc. v.*
10 *Moriana*, 142 S. Ct. 734, 2021 WL 5911481 (Dkt. 201573). Should the U.S. Supreme
11 court find that representative action waivers are enforceable, Defendant contended it
12 would move to compel individual arbitration of Plaintiff's claims, including the PAGA
13 claims, posing a substantial risk to their potential value.

14    Here, Plaintiff applied discounts to the value of the PAGA claims in settlement
15 negotiations in light of Defendant's arguments on the merits of Plaintiff's underlying
16 claims and on the arbitration issues. As is always the case with a trial, Plaintiff needed
17 to accept that there was a possibility that he would not prevail. Thus, in the face of such
18 uncertainty, settlement was advantageous to Plaintiff, the LWDA, and the aggrieved
19 employees as it secured some monetary recovery.

20    ### 4.  *Allocation to LWDA for PAGA Penalties*

21    Pursuant to the Settlement Agreement, $40,000.00 from the GSA shall be
22 allocated to the resolution of the PAGA claim, of which 75% ($30,000.00) will be paid
23 directly to the LWDA, and the remaining 25% will be added to the NSA. Where, as
24 here, PAGA penalties are negotiated in good faith and "there is no indication that [the]
25 amount was the result of self-interest at the expense of other Class Members," such
26 amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, Case  No.
27 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009).

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE
ACTION SETTLEMENT

1    Class Counsel will submit a copy of the Settlement to the LWDA before the

2    hearing of this Motion.

3        5.    *Benefits to Early Resolution*

4        The potential risks attending further litigation also support early resolution and

5    preliminary approval. Courts have long recognized the inherent risks and "vagaries of

6    litigation," and emphasized the comparative benefits of "immediate recovery by way of

7    the compromise to the mere possibility of relief in the future, after protracted and

8    expensive litigation." *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526.

9    Additionally, early resolutions save time and money that would otherwise go to

10   litigation. Parties' resources, as well as the Court's, would be further taxed by

11   continued litigation. Moreover, given that the Class Members in this case are primarily

12   low wage workers, for whom receiving speedy remuneration is particularly important,

13   the potential for years of delayed recovery is a significant concern. Considered against

14   the risks of continued litigation, and the importance of the employment rights and a

15   speedy recovery to plaintiff class members, the totality of relief provided under the

16   proposed Settlement is more than adequate and well within the range of reasonableness.

17   In summary, although Plaintiff and her counsel maintained a strong belief in the

18   underlying merits of the claims, they also acknowledge the significant challenges posed

19   by continued litigation through trial. Accordingly, when balanced against the risk and

20   expense of continued litigation, the Settlement is fair, adequate, and reasonable. *Linney*

21   *v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a

22   settlement is compromise, a yielding of absolutes and an abandoning of highest

23   hopes").

24       6.    *The Effect of Defendant's Prior Settlement*

25       In preparation for the mediation, Class Counsel was informed of, and reviewed

26   an earlier settlement. (See Treglio Decl. at Exh. 2, Motion for Preliminary Approval

27   filed in *Mara Gomez, et al, v. Pinnacle Logistics, LLC, et al.*, San Bernardino Superior

28   Court Case No CIVDS1804163). (Treglio Decl. ¶ 23). That earlier settlement

31

encompassed more claims, for a longer time period, than was at issue here. *Id.* Further, that earlier settlement cut the Class Period significantly. *Id.* In that case, the Defendant resolved a matter of over 11,000 Class Members for $2.275 million. (Treglio Decl. ¶ 24). While the class was smaller in *Gomez*, the number of workweeks was, in fact, much greater, and ultimately, amount paid per workweek in *Gomez* was the benchmark in Class Counsel accepting the amount of $1.4 million. *Id.* Given that there was no threat of arbitration wiping out the possibility of all class-wide or representative recovery in *Gomez*, this is an excellent result for the Parties. *Id.* Lastly, with regard to the PAGA cause of action, the settlement here mirrors the PAGA settlement reached in the *Gomez* action. *Id.* Given the fact that *Viking River* had not yet been decided when *Gomez* was decided, the PAGA recovery here is even stronger. *Id.*

### D.  The Method of Distributing Relief to the Class Is Effective.

The Notice of Proposed Class and Representative Action Settlement ("Notice of Settlement") and settlement administration procedure satisfy due process. FRCP Rule 23(c)(2) requires the Court to direct the litigants to provide Class Members with the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Where the names and addresses of Class Members are easily ascertainable, individual notice through the mail constitutes the "best notice practicable." *Id.* at 175. The Notice of Settlement was jointly drafted and approved by the Parties and provides Class Members with all required information so that each member may make an informed decision regarding his or her participation in the Settlement. The Notice of Settlement provides information regarding the nature of the lawsuit, a summary of the substance of the settlement terms, the class definition and subclass definitions, the deadlines by which Class Members must submit Request for Exclusion or objection, the date for the final approval hearing; the formula used to calculate settlement payments, a statement that the Court has preliminarily approved

the settlement, and a statement that Class Members will release the settled claims unless they opt out.

The Settlement Administrator will mail the Notice of Settlement to all Class Members via first class United States mail. (Treglio Decl., Ex. A, Settlement Agreement at ¶¶ 14.b) Prior to mailing the Notice of Settlement, the Settlement Administrator will search the National Change of Address Database and update the Class Data to reflect any identifiable address changes. Any Notices of Settlement returned to the Settlement Administrator as undeliverable on or before the deadline for postmarking Opt Outs shall be sent promptly via First-Class U.S. Mail to the forwarding address affixed thereto. If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine the correct address using a single skip-trace or other search using the name, address and/or Social Security Number of the Class Member involved, and it shall then perform up to three re-mailings.

### E.  Attorneys' Fees Are Reasonable.

The California Supreme Court has endorsed the percentage method of awarding attorneys' fees where a class action suit results in a common fund for the class, noting that its benefits as compared to the lodestar method include the method's "relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation." *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 503 (2016). The Ninth Circuit is in accord about the benefits of the percentage method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."). Thus, "the percentage-of-the-fund method is preferred when counsel's efforts have created a common fund for the benefit

of the class." *In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018)

Here, Plaintiff's counsel seeks approximately 25% of the Gross Settlement Amount in attorneys' fees ($350,000.00) plus reimbursement of reasonable expenses and costs, such as mediation fees, filing fees and service fees ($25,000.00). Settlement ¶ 8. This percentage is well in line with the fee awards approved in numerous other cases. *See, e.g.*, *Morris v. Lifescan, Inc.*, 54 Fed. App'x. 663, 664 (9th Cir. 2003) (affirming fee award of 33% of fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming fee award of 33.3% of fund); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% of class recovery); *Milburn v. PetSmart, Inc.*, No. 1:18-CV-00535-DAD, 2019 WL 5566313, at *10 (E.D. Cal. Oct. 29, 2019) (awarding 33.3% of fund); *Vedachalam v. Tata Consultancy Servs., Ltd*, No. 06-CV-0963-CW, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013) (collecting cases awarding 30% or more); *Johnson v. Gen. Mills, Inc.*, No. 10-CV-00061-CJC, 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013) (approving fee award of 30% of fund); *Cicero v. DirecTV, Inc.*, No. 07- 15    CV-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) ("courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in … a common fund under $10 million"). In determining whether an attorneys' fee award is justified, the Court must evaluate the results obtained on behalf of the class. *See Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1304 (W.D. Wash. 2001), *aff'd*, 290 F.3d 1043 (9th Cir. 2002).  Plaintiff's counsel has obtained favorable settlement terms in this case, as discussed above.  Thus, here, the attorneys' fees sought are reasonable given the complexity of the litigation.

**F.  There Are No Agreements Made in Connection with the Settlement Other than What Plaintiff Already Identified.**

There are no agreements between the Parties in connection with the Settlement other than what Plaintiff identifies herein and, in the Parties' Joint Stipulation of Class and Representative Action Settlement. (Treglio Decl., Ex. A.)

### G.  The Settlement Provides for Equitable Treatment of Class Members.

The Settlement provides for the equitable treatment of Class Members. The settlement payments are separated into two funds, reflecting the value of the separate releases: (1) the Class Fund for all current and former employees who worked for Capstone within the State of California in a non-exempt position at any time from August 1, 2019 through the Preliminary Approval Date; and (2) the PAGA Fund for all non-exempt former employees who worked for Capstone within the State of California at any time from August 1, 2019 through the Preliminary Approval Date but were no longer employed at the Effective Date. Because longer-term employees of Defendant will be more likely to qualify for both funds, they will also tend to receive higher payouts than shorter-term employees.

Plaintiff also intends to apply for a $20,000.00 Service Award. The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not necessarily render a settlement unfair or unreasonable. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The service award, however, must be "reasonable," and the Court "must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... the amount of time and effort the plaintiff expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." *Id*. Here, the Service Award sought by Plaintiff is very reasonable given the time expended by Plaintiff on behalf of the Class, and service awards of this amount or greater have been approved in numerous cases. *See, e.g.*, *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 n.7 (2018) (class representative may obtain incentive award of up to $25,000); *Moore v. PetSmart, Inc.*, 2015 WL 5439000, at *13 (N.D. Cal. Aug. 4, 2015) (awarding $10,000 service awards); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (incentive awards typically range from $2,000 to $10,000); *Galeener v. Source Refrigeration & HVAC, Inc.*, No. 3:13-CV-04960-VC, 2015 U.S. Dist. LEXIS 193096, at *7-8 (N.D.

35

Cal. Aug. 21, 2015)(collecting cases and holding that service awards of $27,000, $25,000, $15,000, and $2,000 were "fair and reasonable"); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-CV-1365-CW-EMC, 2010 U.S. Dist. LEXIS 49477, at *47 (N.D. Cal. Apr. 22, 2010) (compiling cases and holding service awards of $20,000 were "well justified"); *Glass v. UBS Fin. Servs., Inc.*, No. 06-CV-4068 MMC, 2007 WL 221862, at * (N.D. Cal. Jan. 26, 2007) (approving $25,000 awards to each of four representatives). Accordingly, the requested Service Payment is reasonable.

**H. The Court Should Approve ILYM Group, Inc. as Settlement Administrator.**

The Parties have agreed to retained ILYM Group, Inc. as the Settlement Administrator ILYM has extensive experience in disseminating class action notices and administering class action settlements in thousands of cases. ILYM has provided a bid of $35,000.00 to act as a class action Settlement Administrator for this case. In Class Counsel's experience, this bid is competitive for similar wage and hour class action settlement administrations. (Treglio Decl., ¶ 44)

**VI. CONCLUSION**

The Parties have negotiated a fair and reasonable settlement of claims. Having appropriately presented the materials and information necessary for preliminarily approval, Plaintiff respectfully requests that the Court preliminarily approve the settlement.

Dated: May 12, 2023                    POTTER HANDY, LLP.


                                        By: _____*/s/James M. Treglio*_____
                                            James M. Treglio
                                            Counsel for Plaintiff,
                                            and the Putative Class